IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOI NA BRAZA ATLANTA, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-2007-L |
| | § | |
| EVELYN M. UPCHURCH, Director, | § | |
| Texas Service Center; and | § | |
| MICHAEL CHERTOFF, Secretary, | § | |
| Department of Homeland Security, | § | |
| | § | |
| Defendants.[1] | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' Motion for Summary Judgment and Plaintiff's Motion for

Summary Judgment, both filed January 31, 2005.  After careful consideration of the cross-motions,

responses, replies, competent summary judgment evidence, record, and applicable law, the court

**grants** Defendants' Motion for Summary Judgment, **denies** Plaintiff's Motion for Summary

Judgment, and **dismisses** Plaintiff's suit.

## I.     Factual and Procedural Background

In 2003, Plaintiff Boi Na Braza Atlanta, L.L.C. ("Plaintiff" or "BNB-Atlanta"), a Brazilian-

style steak house in Atlanta, Georgia, petitioned the Citizenship and Immigration Service ("CIS")[2],

---

[1]Michael Chertoff is now the Secretary of the Department of Homeland Security ("DHS").  Pursuant to Fed.
R. Civ. P. 25(d)(1), when a public official is a party to an action and subsequently leaves office, that official's successor
is automatically substituted as a party.  Accordingly, Michael Chertoff is substituted in place of Tom Ridge, former
Secretary of the DHS.  **The clerk of court is directed to amend the docket sheet to reflect this substitution.**

[2]As of March 1, 2003, the agency formerly known as the Immigration and Naturalization Services ("INS")
ceased to be a part of the Department of Justice.  The functions of the INS and several other agencies were assumed by
the newly-created Department of the Homeland Security ("DHS"), headed by Secretary Tom Ridge at the time this suit
was filed, and now headed by Secretary Michael Chertoff.  At this time, the functions of the INS are carried out by the
United States Citizenship and Immigration Services ("CIS") under the DHS umbrella.  The Texas Service Center

**Memorandum Opinion and Order – Page 1**

on behalf of meat-specialist Julio Cesar Ferreira De Barros (along with thirty of his similarly situated colleagues), for "L-1B" visas, a category of visas which allows a multinational business to petition the CIS on behalf of employees in foreign countries for a temporary transfer to its American operation under certain limited circumstances. In this case, Plaintiff petitioned for thirty-one L-1B visas, hoping to transfer De Barros and his colleagues for an initial period of one year from a restaurant in Brazil, owned by its foreign affiliate, to its newly opened restaurant in Atlanta, Georgia. The Texas Service Center ("TSC") of the CIS denied the L-1B visa petitions filed on behalf of De Barros and nineteen of his colleagues. Plaintiff now seeks to overturn the TSC's decisions.

Plaintiff and Defendants have filed cross-motions for summary judgment. As this case is to be decided entirely upon the administrative record as supplemented, and there are no genuine issues as to any material fact, the court will decide the case based on the pleadings and the record. *See* Fed. R. Civ. P. 56(c).

BNB-Atlanta is a Texas limited liability company which operates a Brazilian-style steak house, also known as a *churrascaria*, in Atlanta, Georgia. BNB-Atlanta is affiliated with Boi Na Braza, Inc. ("BNB-Grapevine"), a Texas corporation, which operates a *churrascaria* in Grapevine, Texas. Both BNB-Atlanta and BNB-Grapevine are owned and controlled, in whole or in part, by Matheus Brothers Partnership ("Matheus Brothers").[3] Matheus Brothers also owns Churrascaria Chimaron, Ltda. ("Churrascaria Chimaron"), a foreign affiliate in Sao Paolo, Brazil. Since its

---

("TSC"), of which Evelyn Upchurch is the Director, is the regional office of the CIS. Although the petitions for L-1B visas prior to March 1, 2003 were adjudicated by the INS, for purposes of clarity, the court will refer to the CIS throughout this opinion.

[3]The corporate ownership scheme is as follows: Matheus Brothers owns 100% of BNB-Grapevine and is wholly in charge of its operation; Matheus Brothers owns 38.33% of BNB-Atlanta and controls 50% of its operations.

inception in 1991, Churrascaria Chimaron has specialized in the exclusive traditional method of preparing and serving meat that descended from the gauchos of the Rio Grande do Sul region of southern Brazil.

In 1999, Matheus Brothers opened BNB-Grapevine, its first *churrascaria* in the United States. To staff the restaurant, BNB-Grapevine filed Form I-129s (Petitions for Nonimmigrant Worker), with the CIS on behalf of twenty-two Churrascaria Chimaron employees, known as "*churrasqueiros*" or "gauchos." Specifically, the Form I-129 petitions sought "specialized knowledge" nonimmigrant intra-company transferee visas ("L-1B visas"), pursuant to the intra-company transferee provisions of the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.* (West 1999 & Supp. 2005) (the "INA").[4] The INA defines a transferee as:

> [A]n alien who, within 3 years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves *specialized knowledge*, and the alien spouse and minor children of any such alien if accompanying him or following to join him[.]

8 U.S.C. § 1101(a)(15)(L)(emphasis added). Pursuant to the INA, an alien is considered to "be serving in a capacity involving specialized knowledge with respect to a company if the alien has a special knowledge of the company product and its application in international markets or has an advanced level of knowledge of processes and procedures of the company." *Id.* § 1184(c)(2)(B).

---

[4]The Immigration and Nationality Act permits the admission into the United States of any alien as a nonimmigrant "for such time and under such conditions as the Attorney General may by regulations prescribe . . . ." 8 U.S.C. § 1184.

**Memorandum Opinion and Order – Page 3**

An alien granted an L-1B "specialized knowledge" nonimmigrant visa may be admitted into the United States for up to five (5) years. *Id.* § 1184(c)(2)(D)(ii).

In 2000, the TSC approved the twenty-two petitions for L-1B visas filed by BNB-Grapevine. In 2001, BNB-Grapevine filed four more I-129 petitions for L-1B visas under the intra-company transferee provisions of 8 U.S.C. § 1101(a)(15)(L). The TSC approved these petitions in 2001. Thereafter, in 2001 and again in 2003, with the exception of two petitions, BNB-Grapevine successfully petitioned for two-year extensions for the original approved transferees.

In 2003, Matheus Brothers, along with two other partners, formed BNB-Atlanta in Atlanta, Georgia as a sister restaurant to BNB-Grapevine. In October 2003, BNB-Atlanta filed Form I-129 petitions for L-1B visas under the intra-company transferee provisions of 8 U.S.C. § 1101(a)(15)(L) on behalf of thirty-one *churrasqueiros* trained at Churrascaria Chimaron in Brazil.[5] In support of the I-129 petitions for l-1B visas, BNB-Atlanta filed exhibits to establish each beneficiary's duties and qualifications, the bona fides of the company and affidavits explaining that Churrascaria Chimaron trains its *churrasqueiros* to use traditional, secret recipes and methods for meat preparation, grilling, and serving, and also to use specially designed fire pits, skewers, and carving tools. As an example, in the petition filed on behalf of Julio Cesar Ferreira De Barros ("De Barros"), affiant Julio Matheus, a general partner of Matheus Brothers, states that:

> Unlike traditional restaurants or steak houses, *churrascarias* specialize in an exclusive, flamboyant method of preparing and serving meat known as *churrasco*: they specialize in providing a

---

[5]Also in 2003, BNB-Atlanta filed a Freedom of Information Act ("FOIA") request, demanding that Defendants produce, among other things, "[c]opies of all guidelines, memorandums, objectives, cables, procedures, policy directives, field instructions, internal memos, training manuals, and notices circulated and/or issued by BCIS/INS to its employees from 1999 to the present relating to the adjudication of L-1 petitions." *See* Pl. App. to Pl. MSJ at Exh. 6. In response, TSC stated that from "1999 to present there have been no new guidelines issued in the adjudication of L-1 petitions. The petitions are adjudicated in accordance with Title 8, Code of Federal Regulations, Part 214.2(1)." *Id.*

> cultural experience, along with non-traditional cuts of meat and alternative modes of service. A *churrasqueiro* begins learning his sophisticated knowledge almost from birth. [. . .] [Churrasqueiros's] knowledge is truly specialized and not commonly held throughout the industry.

De Barros Administrative Record (SRC-04-023-50283) at 27 (hereinafter "De Barros Admin. Rec."). After BNB-Atlanta filed the L-1B visa petitions, in or around December 2003 and January 2004, Defendants requested additional information from BNB-Atlanta through a Request for Evidence ("RFE"). *Id.* at 551-55.[6] Among other things, the RFE requested evidence related to specialized training, the resumés of the beneficiaries, and other evidence to "establish that the beneficiary's knowledge is uncommon, noteworthy or distinguished by some unusual quality and not generally known by practitioners in the field." *Id.* at 552. In response to the RFE, BNB-Atlanta submitted additional evidence, including the affidavit of Orlando Preissler, BNB-Atlanta's manager, stating that:

> The position of Churrasqueiro at Boi Na Braza Atlanta, LLC (BNB) requires extensive training in meat selection and preparation, fire pit operation, table-side meat service, and it also requires knowledge of recipes and meat preparation procedures unique to Boi Na Braza and Churrascaria Chimaron (Chimaron), our Brazilian affiliate. [. . . ]The specialized knowledge required of the Churrasqueiros we employ can only be gained through prior experience gained at various levels of increasing responsibility at Chimaron. Contrary to what is stated in the RFE, Boi Na Braza and Chimaron are unique churrascarias which utilize proprietary recipes, tools, and food preparation not used by other churrascarias in the United States or in Southern Brazil. The knowledge and skill required to work at one of our churrascarias are unique and specialized and are only shared with Churrasqueiros who are selected for career training. The skills obtained by a Churrasqueiro are unique both in respect to our other employees and to other churrasqueiros at other restaurants.

---

[6]In December 2003, the TSC approved seven of the thirty-one petitions originally filed in October 2003.

**Memorandum Opinion and Order – Page 5**

*Id.* at 548-49.

Between March 2004 and June 2004, the TSC denied twenty of BNB-Atlanta's Form I-129 petitions for L-1B visas.[7]  In nearly identical decisions, the TSC found that the beneficiaries were not employed in a capacity involving "specialized knowledge."  For purposes of brevity, the court will refer to the petition filed on behalf of beneficiary De Barros as an example.  On June 1, 2004, the TSC denied the petition filed on behalf of De Barros finding that BNB-Atlanta had failed to establish that De Barros had "specialized knowledge."  *See* De Barros Admin. Rec. (SRC-04-023-50283) at 3.  In its decision, the TSC considered the regulation's definition of "specialized knowledge": "Specialized knowledge means special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures."   *Id.* at 2 (quoting 8 C.F.R. § 214.2(l)(1)(ii)(D)). The TSC also relied on the interpretation of "specialized knowledge" from a March 9, 1994 memorandum by James A. Puleo, then-Acting Executive Associate Commissioner of the Office of Operations for the INS, titled "Interpretation of Specialized Knowledge" ("Puleo Memorandum"),

_____

[7]*See* Balzanello decision Admin. Rec., SRC-04-024-51270 at 1; Bouvier decision Admin. Rec., SRC-04-024-52283 at 1; Chaves decision Admin. Rec., SRC-04-024-51986 at 1; Cimarosti decision Admin. Rec., SRC-04-024-51827 at 1; Cosmann decision Admin. Rec., SRC-04-023-52306 at 1; Costa decision Admin. Rec., SRC-04-023-51074 at 1; Dal Molin decision Admin. Rec., SRC-04-024-51226 at 1; De Barros decision Admin. Rec., SRC-04-023-50283 at 1; De Bortoli decision Admin. Rec., SRC-04-024-52057 at 1; De Sousa decision Admin. Rec., SRC-04-024-50104 at 1; Fachini decision Admin. Rec., SRC-04-024-50093 at 1; Kutzke decision Admin. Rec., SRC-04-023-50167 at 1; Ongaratto decision Admin. Rec., SRC-04-023-52284 at 1; Neto decision Admin. Rec., SRC-04-023-50341 at 1; Pawlak decision Admin. Rec., SRC-04-024-51263 at 1; Perin decision Admin. Rec., SRC-04-024-52084 at 1; Recktenwald decision Admin. Rec., SRC-04-024-52334 at 1; Triches decision Admin. Rec., SRC-04-023-50322 at 1; Zeni decision Admin. Rec., SRC-04-023-50295 at 1.  The Possamai decision (Admin. Rec., SRC-04-024-52173 at 1) has been misplaced by Defendants.  *See* Def. MSJ at 2, n.2 and Ex. 2.  Although the court, therefore, has been unable to review the Possamai decision, Plaintiff has not contested Defendants' representations that all twenty petitions for L-1B visas were denied for nearly identical reasons.  *See* Def. Mot. at 2.  In addition, Plaintiff has not moved for summary judgment on this basis.  Accordingly, the court accepts Defendants' representation to the court that the Possamai decision is similar to the other nineteen decisions under review.

**Memorandum Opinion and Order – Page 6**

which "states that an alien would possess specialized knowledge if it were shown that the knowledge is different and advanced from that generally held within the industry." *Id.* In addition to the Puleo Memorandum, the TSC decision referred to the 2002 memorandum by Pujio O. Ohata ("Ohata Memorandum"), the then-Associate Commissioner for Service Center Operations, reiterating the Puleo Memorandum. Finally, the TSC decision noted that the "legislative history for the term specialized knowledge provides ample support for a restrictive interpretation of the term. The intent of the L-1B classification is to allow 'key personnel' who have specialized knowledge to come to the United States to work for a qualifying organization." *Id.* In further analyzing the legislative history, the TCS decision states:

> The intent of the L program is that it be limited. It does not apply to all personnel who have specialized knowledge. It is clear that [any] business coming to the U.S. would like to bring along experienced personnel; however, because of the definition of specialized knowledge and the restrictive nature of the L program as reaffirmed in 1756, Inc. v. Attorney General, it is clear that the intention of the L-1B program sets a higher bar than simply that of a skilled worker.

*Id.* at 4.[8]

After reviewing the regulations pertaining to "specialized knowledge" L-1B visas, as further interpreted in the Puleo Memorandum and Ohata Memorandum, along with the legislative history, and after considering BNB-Atlanta's petition and evidence, the TSC denied the petition, finding that:

> Knowledge of a firm's secret recipes is insufficient to meet the standard for specialized knowledge, as any competent Churrasqueiro

---

[8]In *1756, Inc. v. Attorney General*, 745 F. Supp. 9 (D.D.C. 1990), upon which the TSC's decision relies, the court denied a restaurant's petitions for L-1B visas, finding that the agency's decision was not arbitrary, capricious or an abuse of discretion under the APA. With regard to the legislative history, the court noted in "the legislative history a clear intent to limit the L-1 category to 'key personnel'" and further noted the subsequent adoption of a narrow definition of specialized knowledge. 745 F. Supp. at 13 (citations omitted).

> should be able to follow the recipe and instructions to produce the product. As all Churrasqueiros employed by Boi Na Braza or Churrascaria Chimaron must know these recipes and possess these skills, it is unclear how they can be unique with respect to other employees or how any of the Churrasqueiros can be considered to be key personnel. Although petitioner claims that the Churrasqueiros employed by Boi Na Braza and Churrascaria Chimaron must have skill and ability unavailable elsewhere, petitioner has not explained how it differs from others in the same industry. Petitioner has not established that this particular position requires specialized knowledge.

*Id.* at 3. As further reason for denying the petition for L-1B visa filed on behalf of De Barros, the TSC stated that:

> [BNB-Atlanta] provided little information about the beneficiary's skills and abilities. Indeed, although requested, petitioner did not submit the beneficiary's resume. The record neither claims nor establishes that the knowledge the beneficiary has regarding any facet of Brazilian cooking is sufficiently rare **in that particular industry**. That is, the evidence submitted with the petition gives no reason to believe that anything the beneficiary learned with the overseas company is sufficiently esoteric in the Brazilian culinary industry. Hence, we cannot assume that what the beneficiary experienced while employed as a churrasqueiro was restricted to only him and few, if any, others.

*Id.* (emphasis in original ). In denying the petition for L-1B visa filed on behalf of De Barros, the TSC also noted that BNB-Atlanta was vague about the specifics of training required of *churrasqueiros* and that BNB-Atlanta failed to submit evidence of training programs with drafted curriculum in its RFE response.

On September 15, 2004, BNB-Atlanta filed its Original Complaint for Declaratory Relief against Defendants Evelyn Upchurch, the Director of the TSC, and the Secretary of the Department of Homeland Security (sometimes collectively referred to as "Defendants"). BNB-Atlanta alleges that Defendants denied the "specialized" L-1B visa petitions based upon an interpretation contrary

to and inconsistent with the applicable regulations.  Pl. Comp. at 7, ¶ 24.  BNB-Atlanta further alleges that Defendants' decisions to deny the twenty petitions for L-1B visas were arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).  *Id.* ¶ 25.  BNB-Atlanta seeks an order to compel Defendants to perform their duty owed to Plaintiff, namely, to properly adjudicate the L-1B petitions.  *Id.* at 8.  Finally, BNB-Atlanta seeks attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.  *Id.*

On January 31, 2005, the parties filed cross-motions for summary judgment. In their summary judgment motion, Defendants contend that the TSC properly denied the L-1B visa petitions and that the TSC decisions should be upheld by this court because BNB-Atlanta did not meet its burden of establishing that the position of *churrasqueiro* at BNB-Atlanta required "specialized knowledge."  *See* Def. MSJ Brief at 14.  In its cross-motion for summary judgment, BNB-Atlanta argues that the court should set aside the TSC's decisions, as its denial of the L-1B visas petitions was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See* Pl. MSJ Brief at 3 (citing 5 U.S.C. § 706(2)(A)).

## II.      Scope of Review under the Administrative Procedure Act

CIS decisions are reviewed under 5 U.S.C. § 706(2)(A) of the Administrative Procedure Act ("APA"), under which a CIS decision can be overturned only if a plaintiff can demonstrate that the ruling was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See generally Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989) ("A denial by the INS of an application for a visa may be reversed only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.") A decision is arbitrary and capricious when it is "so implausible that it could not be ascribed to a difference in view or the

product of agency expertise." *See Shine's Ranch Corp. v. Ridge*, 2005 WL 1923595 at *2 (N.D.

Tex. Aug. 10, 2005) (Buchmeyer, J.) (quoting *Wilson v. U.S. Dep't of Agriculture*, 991 F.2d 1211,

1215 (5th Cir. 1993)).  Further, "the agency decision need only have a rational basis, and it does not

have to be a decision which the court would have made." *Wilson*, 991 F.2d at 1215.  Although the

reviewing court is bound to ensure that the CIS engaged in "reasoned decision-making" in denying

an application, "the [CIS] is entitled to considerable deference in its interpretation of the governing

statute." *Nat'l Hand Tool*, 889 F.2d at 1475.    "Even if statutory or regulatory language is

ambiguous, deference is usually given to the agency's interpretation." *Defensor v. Meissner*, 201

F.3d 384, 3886 (5th Cir. 2000).  Moreover, "[i]t is well-settled that the applicant for a visa bears the

burden of establishing eligibility."  *Nat'l Hand Tool*, 889 F.2d at 1475.  *See* 8 U.S.C. § 1361

("Whenever any person makes application for a visa [ . . . ] the burden of proof shall be upon such

person to establish that he is eligible to receive such visa . . . .").

        With regard to judicial review of an agency's decisions, "a reviewing court has no business

rejecting an agency's exercise of its generally conferred authority to resolve a particular statutory

ambiguity simply because the agency's chosen resolution seems unwise . . . ." *United States v.

Mead Corp.*, 533 U.S. 218, 229 (2001).  In *Mead*, the Court noted that: "Congress not only engages

in express delegation of specific interpretive authority, but that sometimes the legislative delegation

to an agency on a particular question is implicit."  *Id.*  This level of deference to an agency's

decisions is known as "*Chevron* deference."  *See Chevron U.S.A. v. Natural Resources Defense

Council*, 467 U.S. 837 (1984).  Courts routinely apply *Chevron* deference where there has been

"notice-and-comment rulemaking or formal adjudication." *Mead*, 533 U.S. at 230.  Even where

"notice-and-comment rulemaking or formal adjudication" are absent, the Court has "sometimes

found reasons for *Chevron* deference even when no such administrative formality was required and none afforded." *Id.* at 231. Where an agency's decisions are not entitled to *Chevron* deference, they may nevertheless still be entitled to "*Mead* deference," "given the specialized experience and broader investigations and information available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *Id.* at 235. *Mead* deference is also known as *Skidmore* deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). This lesser standard of deference dictates that deference be assigned to the agency's decision in an amount proportional to the decision's "power to persuade" based on the decision-writer's "thoroughness, logic and expertness; the decision's fit with prior interpretations[;] and any other sources of weight." *Mead*, 533 U.S. at 235; *see also Skidmore*, 323 U.S. at 140.

## III.   Analysis

### A.   The Cross-Motions for Summary Judgment

Defendants have moved for summary judgment contending that the TSC's denial of BNB-Atlanta's twenty petitions for L-1B visas was proper under the APA and should therefore be upheld by this court. Def. MSJ Brief at 2, 12-13. In its cross-motion for summary judgment, BNB-Atlanta argues that the denial of the L-1B visa petitions was an abuse of discretion under the APA, and that the court should therefore enter summary judgment in its favor, and set aside the TSC's arbitrary and capricious decisions and order the approval of the twenty L-1B visa petitions at issue. Pl. MSJ Brief at 15. As the cross-motions for summary judgment are based on the same administrative record and the legal analysis significantly overlaps, the court will analyze the cross-motions *in tandem*.

In support of their motion for summary judgment and in opposition to Plaintiff's cross-motion, Defendants argue that a review of the administrative record and the TSC's decisions denying the twenty L-1B visa petitions (*see supra* n.7), demonstrates that the decisions were not arbitrary, capricious or an abuse of discretion, but instead were well-supported by the record and established law.  *See* Def. MSJ Brief at 12-14.  Defendants also contend that BNB-Atlanta failed to meet its burden of establishing eligibility for the L-1B visas, that is, that BNB-Atlanta failed to provide sufficient evidence to establish that the twenty *churrasqueiros* had specialized knowledge and that, in response to the RFE, BNB-Atlanta failed to submit the resumés of the beneficiaries, failed to detail their training, and failed to demonstrate how these meat waiters differ from others in the industry.  *See id.* at 13-14; Def. Reply to Pl. Resp. to Def. MSJ Brief at 3, 6.  Finally, Defendants argue that the agency's decisions in this case are entitled to *Chevron* deference, since the regulations at issue were formulated with notice and hearing.   Def. MSJ Brief at 12.  Alternatively, Defendants argue that even were the court to apply *Mead*, and not *Chevron*, the TSC's decisions were correct and summary judgment should be granted in Defendants' favor upholding the TSC's decisions denying the L-1B visa petitions.  Def. Resp. to Pl. MSJ Brief at 2.

In support of its own motion for summary judgment, and in opposition to Defendants' cross-motion, BNB-Atlanta argues that the agency's decisions in this case are not entitled to any deference whatsoever.  Pl. MSJ Brief at 2-11; Pl. Reply to Def. Resp. to Plf. MSJ Brief at 1-3.  BNB-Atlanta further argues that Defendants' denial of the L-1B "specialized knowledge" visa petitions must be set aside, as the agency abused its discretion under the APA when issuing the denials.  Further, BNB-Atlanta contends that it has met its burden of establishing visa eligibility for the twenty *churrasqueiros* based on the affidavits submitted with the original petitions and later in the RFE

process, and that this evidence demonstrates the requisite "specialized knowledge" of the twenty (20) *churrasqueiros*. *Id.;* Pl. Reply to Def. Resp. to Pl. MSJ Brief at 6-9.

Prior to analyzing the administrative record and the parties' respective arguments as to whether BNB-Atlanta met its burden of establishing L-1B visa eligibility, the court must first resolve the parties' dispute concerning the appropriate level of deference to be accorded to the TSC's decisions to deny the L-1B visa petitions.

### B.        Level of Judicial Deference to TSC's Denials of L-1B Visa Petitions

As set forth above, Defendants argue that the agency's decisions in this case are entitled to *Chevron* deference, as the regulations at issue were formulated with notice and hearing.  Moreover, Defendants note that *Mead*'s examples of "notice-and-comment rule making" and "formal adjudication" as illustrations of Congressional delegation of authority are not exhaustive characteristics of when an agency's decision is due *Chevron* deference.  Alternatively, Defendants argue that even if *Chevron* deference were not applicable, the TSC's decisions would easily be given deference under *Mead*.  This lesser standard of deference dictates that deference be assigned to the agency's decision in an amount proportional to the decision's "power to persuade" and based on the decision-writer's "thoroughness, logic and expertness; the decision's fit with prior interpretations[;] and any other sources of weight."  *Mead*, 533 U.S. at 235; *see also Skidmore*, 323 U.S. at 140.

Plaintiff contends that *Chevron* deference is not due in this case since Defendants used neither "notice-and-comment rule making" nor "formal adjudication," and that under *Mead*, to garner *Chevron* deference, a party must prove that an agency engaged in either "notice-and-comment rule making" or "formal adjudication" to show that Congress delegated authority to the agency. Plaintiff argues that, without a showing of Congressional delegation of power, there cannot

be *Chevron* deference.   Instead, Plaintiff contends that the Supreme Court's decision in *Mead* controls this case.   Specifically, Plaintiff contends that, under *Mead,* the TSC's denial of Plaintiff's L-1B visa petitions should be afforded not merely less deference than the highest level of deference articulated in *Chevron*, but no deference, as "thoroughness, logic, and expertise are completely absent from Defendants' decisions," as illustrated by Defendants' response to Plaintiff's Freedom of Information Act request (*see supra* n.5), and as the TSC's decisions denying the twenty L-1B visa petitions are inconsistent with prior agency rulings.  Pl. MSJ Brief at 9.  In urging the court to find that L-1B visa decisions should not be given deference, Plaintiff argues that Defendants have neither a highly detailed regulatory scheme nor specialized experience.   Plaintiff contends that, since Defendants' policy with regard to "specialized knowledge" stems from the Puleo Memorandum rather then a statute, there is a lack of a highly detailed regulatory scheme.

The court need not resolve the contested issue of whether *Chevron* deference should be given to agency decisions regarding L-1B visa petitions since, under *Mead*, the court concludes that the TSC's decisions to deny the L-1B visa petitions in this case are entitled to significant deference.[9] *See Tex. A&M Univ.-Corpus Christi v. Upchurch*, 2003 WL 21955866 at *1 (N.D.Tex. July 08, 2003) (quoting *Mead*, 533 U.S. at 235) ("Because the regulatory scheme for visa applications is 'highly detailed,' and because visa applications benefit from the 'specialized experience' of the agency, there is little doubt that *Skidmore* deference would apply to decisions on visa applications

---

[9]The court notes that nothing in *Mead*, which held that "ruling letters" on tariff classifications are not entitled to *Chevron* deference, requires this court to conclude, *per se*, that decisions on visa petitions are not entitled to *Chevron* deference.  As the Supreme Court stated in Mead, ". . . as significant as notice-and-comment is in pointing to *Chevron* authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for *Chevron* deference even when no such administrative formality was required and none was afforded." 533 U.S. at 230-31.

**Memorandum Opinion and Order – Page 14**

if *Chevron* deference did not apply[]"), *aff'd*, 99 Fed. Appx. 556 (5th Cir. June 2, 2004) (unpublished).

In *Texas A&M University*, Texas A&M University filed a petition for an O-1 visa (extraordinary ability in the sciences, arts, education, business, or athletics) on behalf of an associate professor at Texas A&M University, who had previously been granted an 0-1 visa.  After the TSC's denial of the visa petition, Texas A&M University challenged the decision under the APA, making many of the same arguments as BNB-Atlanta in this case.   The court rejected Texas A&M University's arguments and determined that the agency's decision to deny the second visa petition for O-1 status to Texas A&M University's beneficiary was not an abuse of agency discretion.  In so finding, the court noted that while it was not convinced that absolute *Chevron* deference should not be given, the court would apply the lesser deference standard of *Mead* and *Skidmore*.  The court concluded that, based upon the agency's written decision and the court's own review of the evidence, the agency's denial of the visa petition was "entitled to significant deference."  2003 WL 21955866 at *1.  The court noted that the regulatory scheme for visa applications is highly detailed, decisions regarding visa applications benefit from the specialized experience of the agency, the agency applied the evidence to the applicable regulation and the agency reached a logical result after considering all points.  The Fifth Circuit affirmed the court's decision, concluding that the "district court gave appropriate deference to the agency's decision."  *Tex. A&M Univ.-Corpus Christi*, 99 Fed. Appx. at 557.

Having examined the administrative record and the parties' briefs regarding the level of deference to be afforded the TSC's decisions in this case, the court concludes that Defendants' denial of Plaintiff's visa petitions should similarly be given significant deference under the *Mead*

criteria.  Although the regulatory scheme for 0-1 visas is admittedly more detailed than for L-1B

visas, nevertheless, the court concludes that, with regard to the regulations for L-1B visas, the

regulatory scheme is "highly detailed," and L-1B visa applications will benefit from the "specialized

experience" of the agency.  *Mead*, 533 U.S. at 235.  Accordingly, the agency's decisions in this

instance are entitled to significant deference under *Mead*.  *See id.*

        Further, the court rejects Plaintiff's argument that no deference is due because the denials

at issue are inconsistent with prior decisions by the TSC.[10]  As Defendants correctly point out, an

agency's decision is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with the law" simply because the agency previously interpreted a statute differently.  *See* Def. Reply

at 4.  *See generally Chevron*, 467 U.S. at 863 ("[t]he fact that an agency has from time to time

changed its interpretation of the term 'source' does not, as respondents argue, lead us to conclude

that no deference should be accorded the agency's interpretation of the statute.  An initial agency

interpretation is not instantly carved in stone.");  *Laclede Gas Co. v. Fed. Energy Regulatory

Comm'n,* 772 F.2d 272, 275 (5th Cir. 1984) (agency may depart from its prior precedent if it

explains the basis for doing so);  *Wilson v. INS,* 43 F.3d 211, 216 (5th Cir. 1995) ("An agency is not

required to establish rules of conduct to last forever, but rather must be given ample latitude to adapt

[its] rules and policies to the demands of changing circumstances.") (citing *Rust v. Sullivan*, 500

U.S. 173, 186-87 (1991)).

        Similarly, the court rejects Plaintiff's argument that the decisions to deny the petitions in this

case were improper because the TSC in the past (and recently) granted extensions for certain other

---

[10]Plaintiff points out that twenty identical visas were approved in 2000; however, in 2004, of the thirty-one petitions submitted for L-1B visas, only seven were approved.  Plaintiff further points out that the TSC granted extensions of L-1B visas as recently as 2004.  Plaintiff contends that this inconsistency is proof of the agency's arbitrary decision making.  *See* Pl. MSJ Brief at 9.

**Memorandum Opinion and Order – Page 16**

beneficiaries.  As Defendants correctly assert, petitions for extensions of previously approved visas for beneficiaries already working in the United States are not, as Plaintiff claims, "petitions based on the exact same position . . . [or] the same facts and circumstances").  *See* Def. Reply to Pl. Resp. to Def. MSJ Brief at 5 (quoting Plf. Resp. to Def. MSJ Brief at 4).   In an April 24, 2004 memorandum from William R. Yates, Associate Director of Operations for the CIS (*see* Def. Reply to Pl. Resp. to Def. MSJ Brief at Ex. B), Yates clarified the agency's policy by making it clear that: "In matters relating to an extension of nonimmigrant petition validity involving the same parties (petitioner and beneficiary) and the same underlying facts, a prior determination by an adjudicator that the alien is eligible for the particular non-immigrant classification sought should be given deference."  *See also Chevron*, 467 U.S. at 863-64 ("to engage in informed rule-making, [the agency] must consider varying interpretations and the wisdom of its policy on a continuing basis.")

### C.      "Specialized Knowledge"

Having determined that the TSC's decisions denying the L-1B visa petitions are entitled to significant deference under *Mead*, the court now addresses whether the TSC's decisions were arbitrary and capricious or an abuse of agency discretion.  As set forth below, the court concludes they were not, and therefore upholds the TSC's decisions denying the L-1B visas in this case.

"Specialized knowledge" is defined as: "special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures."  8 C.F.R. § 214.2(l)(1)(ii)(D).  According to the Puleo Memorandum, specialized knowledge may be present if the individual:

> 1.      Possesses knowledge that is valuable to the employer's competitiveness in the market place;

2.      Is qualified to contribute to the U.S. employer's knowledge of foreign operating conditions as a result of special knowledge not generally found in that industry;

3.      Has been utilized abroad in a capacity involving significant assignments which have enhanced the employer's productivity, competitiveness, image, or financial position;

4.      Possesses knowledge which, normally can be gained only through prior experience with that employer; or

5.      Possesses knowledge of a product or process which cannot be easily transferred or taught to another individual.

Def. MSJ Brief at Ex. C.  Further, as set forth in the Ohata Memorandum:

> The alien should possess a type of specialized or advanced knowledge that is different from that generally found in the particular industry.  The knowledge need not be proprietary or unique.  Where the alien has specialized knowledge of the company product, the knowledge must be noteworthy or uncommon.  Where the alien has knowledge of company processes and procedures, the knowledge must be advanced.  Note, the advanced knowledge need not be narrowly held throughout the company.  Further, there is no test of the U.S. labor market in determining whether an alien posses[ses] specialized knowledge.  Only an examination of the knowledge possessed by the alien is necessary. [. . .] The petitioner bears the burden of establishing through the submission of probative evidence that the alien's specialized knowledge is distinguished by some unusual qualification and not generally known by practitioners in the alien's industry.  Likewise, a petitioner's assertion that the alien possesses an advanced level of knowledge must be supported by evidence describing and setting apart the knowledge from elementary knowledge possessed by others.

*Id.* at Ex. D.

        Having reviewed the administrative record, the court determines that Defendants' decisions were not arbitrary, capricious or an abuse of discretion.  The TSC's denials detailed the requirements of  8 C.F.R. § 214.2(l)(1)(ii)(D), as well as the agency's interpretive memoranda, applied the record evidence to the regulations, considered the applicable legislative history and reached a logical result

**Memorandum Opinion and Order – Page 18**

after an adequate treatment of the issues presented.  The decisions notified BNB-Atlanta regarding the reasons its beneficiaries had not met their burden of establishing that they had "specialized knowledge."  Also, the court's independent review of the administrative record is consistent with the TSC's decisions to deny the twenty L-1B visa petitions.  Additionally, the court notes that determining whether a particular individual should be permitted entry into the United States entails the exercise of judgment grounded in important policy concerns.  Given these overarching concerns, and that the agency gave adequate consideration to relevant facts contained in the record, and construed the statute and pertinent regulations consistent with the statutory and regulatory language, the court determines that the TSC's decisions were correct and not arbitrary, capricious, or an abuse of discretion.

## IV.    Conclusion

For the reasons set forth above, the court determines that Defendants' denials of Plaintiff's petitions for L-1B visas were not arbitrary, capricious, or an abuse of discretion.  Plaintiff has failed to meet its burden of establishing that the twenty *churrasqueiros* had "specialized knowledge."  The court finds that based on the above, there remain no genuine issues of material fact.  The court therefore **grants** Defendants' Motion for Summary Judgment and upholds the Defendants' denials of the twenty L-1B visa petitions in this case.  As the court has considered the cross-motions for summary judgment *in tandem*, and granted Defendants' summary judgment motion, granting Plaintiff's cross-motion for summary judgment would be totally inconsistent with the  court's analysis.  Accordingly, the court **denies** Plaintiff's Motion  for Summary Judgment.  Plaintiff's case is **dismissed**.  Final judgment will issue by separate document as required by Fed. R. Civ. P. 58.

**Memorandum Opinion and Order – Page 19**

**It is so ordered** this 27th day of September, 2005.


Sam A. Lindsay
United States District Judge